UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRANK LICAVOLI,

    Plaintiff,

v.

Civil No. 07-12685
Honorable Bernard A. Friedman

STEVEN MICHALSKI, et al.,

    Defendants.
                                     /

**OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

**I.    Introduction**

This matter is before the Court on Defendants' motion for summary judgment. Plaintiff has filed a response brief. Pursuant to E.D. Mich. LR 7.1(e)(2), the Court shall decide this motion without oral argument.

Plaintiff, Frank Licavoli, is a Michigan Department of Corrections State Corrections Officer. He has filed a one-count Complaint against Defendants pursuant to 42 U.S.C. § 1983 for alleged violation of his First Amendment rights. Defendants, Steven Michalski and Anthony Grzesiak, are Michigan Department of Corrections employees that were assigned to interview fifteen applicants, including Plaintiff, for three positions that opened at a facility in Caro, Michigan.

**II.    Facts**

Plaintiff hired into the Michigan Department of Corrections in 2000 as an E-9 State Corrections Officer. He was assigned to Camp Tuscola from 2000-2003 in Tuscola County. Camp Tuscola is 4.9 miles from Plaintiff's home.

In September, 2003 Plaintiff was transferred from Camp Tuscola to the Thumb Correctional Facility in Lapeer, Michigan, which is 37.12 miles from Plaintiff's home. The transfer was considered a lateral transfer, and Plaintiff remained an E-9 corrections officer.

In Novmeber, 2004 a vacancy opened at Camp Tuscola. Plaintiff sought a transfer to the Tuscola County facility, but it was filled by another applicant.

Plaintiff states that in or about December, 2005 or early 2006, a Corrections Officer assigned to the Thumb Correctional Facility told Plaintiff about some serious allegations regarding the Deputy Warden's behavior. According to Plaintiff, the Corrections Officer told him that Deputy Warden Riley had purchased pizza for inmates, and allowed the prisoners to eat the pizza in his Deputy suite area. Plaintiff states that such activity can create over familiarization, which can lead to favoritism and create a security risk.

Plaintiff states that he was concerned about the security risk posed by such over familiarization, and that he was also concerned about the potential of such behavior leading to drugs making their way into the facility. Plaintiff reported his concerns to a cousin at the Department of Justice and then to the Michigan Attorney General's Office.

Around August, 2005, the Camp Tuscola Facility shut down. In 2006, the Department of Corrections re-opened the Camp Tuscola Facility as a Residential Re-entry Program. In the Fall of 2006, the Department of Corrections posted a position for the soon to be opened Tuscola Residential Re-entry Program. Licavoli applied for the position, and on December 6, 2006, interviewed for it.

Interviews for the position were conducted over two days, and consisted of fifteen applicants. The interview panel consisted of Defendant Grzesiak, Defendant Michalski, Kerri Huizar (Supervisor at the Bay County probation office), Charles Green (agent at the Tuscola

Residential Re-entry Program), and Lieutenant James Cousins. Grzesiak led the interviews. In advance of the interviews, Grzesiak was provided with a packet of information from personnel, which included the names of the candidates, resumes, the questions that had to be asked, and forms to be filled out to grade each candidate. The panelists were to ask only the questions that were supplied by personnel, and were not to deviate from the listed questions.

Plaintiff alleges that on the day of his interview, he talked to another corrections officer and was informed that Michalski had made a comment to other corrections officers that he would make sure that Plaintiff never got a job back at the Tuscola facility. Plaintiff states that when he learned of this statement, he complained, and Grzesiak, after consulting with other interview panelists, removed Michalski from the interview panel. Michalski's scores for the other interviewees were removed so that the final scores factored out any participation or influence by Michalski. On December 16, 2006, Grzesiak forwarded the panel's interview summary to the Acting Regional Administrator for the Department of Corrections. Licavoli did not receive the lateral transfer.

Plaintiff states that during his interview he was asked by Grzesiak about a pizza party for parolees. The parties dispute whether Grzesiak asked the other interviewees questions about a pizza party. Such a question was not included in the form questions that the interviewers were instructed to ask.

Plaintiff alleges that the Defendants influenced the interview panel, and awarded the position to other individuals because of Plaintiff's previous reporting of alleged work rule violations at the Thumb Correctional Facility to the Michigan Department of Corrections, Department of Justice, Attorney General's Office and Michigan State Police.

### III.    Standard of Review

Summary judgment is proper where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. In considering a motion for summary judgment, the Court will construe all facts in a light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). There are no genuine issues of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Id. If the movant carries its burden of showing an absence of evidence to support a claim, then the nonmovant must demonstrate by affidavits, depositions, answers to interrogatories, and admissions that a genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 324-325 (1986).

IV. Analysis

Plaintiff's complaint alleges a First Amendment retaliation claim, asserted through 42 U.S.C. § 1983 against Steve Michalski and Anthony Grzesiak. Plaintiff alleges that Defendants retaliated against him as a consequence of his reporting the alleged inmate pizza party to the Department of Justice, Attorney General's Office and Michigan State Police. Plaintiff claims that Defendants refused to hire him for the position at the Tuscola Facility because Plaintiff commented on a matter of public concern.

Defendants make multiple arguments in support of their motion for summary judgment. First, Defendants argue that Plaintiff has failed to establish a First Amendment violation, because Plaintiff was not speaking as a private citizen when he reported an alleged work rule violation, as such reporting was one of Plaintiff's job duties as a Michigan Department of Corrections officer. Second, Defendants argue that Plaintiff has failed to establish that as a consequence of conduct or speech by Defendant Michalski, Plaintiff suffered an adverse employment event. Defendants assert that Michalski did not participate in the interview panel's

decision not to transfer Plaintiff, and is thus entitled to summary judgment.  Third, Defendants argue that Plaintiff has failed to establish a causal link between Plaintiff's speech and his claim of an adverse employment action.  Fourth, Defendants argue that Plaintiff has failed to establish an adverse employment action, as the position sought at the Tuscola Re-entry Program constituted a lateral transfer, and the denial of such transfer does not amount to an adverse employment action.  Finally, Defendants argue that they are entitled to qualified immunity, as Plaintiff has failed to establish that Defendants violated a constitutional right.

In response, Plaintiff argues that he can establish a First Amendment violation because his reporting of the alleged work rule violations was done as a matter of public concern as a citizen outside the scope of his job duties as an employee of the Michigan Department of Corrections to outside agencies including the Michigan Attorney General's Office and the United States Department of Justice.  Second, Plaintiff claims that he can demonstrate a causal connection between his protected speech and the denial of his application for a position at the Tuscola Residential Re-entry Program.  Third, Plaintiff argues that there is a genuine issue of material fact whether Defendants had knowledge of Plaintiff's complaints regarding the alleged pizza party.  Fourth, Plaintiff states that under First Amendment law, the proper analysis is whether adverse action had a "chilling effect" on his speech, and that not getting the position at the Tuscola Re-entry Program had such effect.  Finally, Plaintiff argues that Defendants are not entitled to qualified immunity, as Plaintiff had a well-established First Amendment right to speak out on matters of public concern without fear of retaliation.

Of the above arguments that the parties make, the Court is most concerned with the question of whether Plaintiff suffered retaliation for engagement in a protected activity.  The Court does not believe that the denial of a lateral transfer constitutes an adverse employment

action. Assuming for the sake of this motion that Plaintiff engaged in protected activity by reporting the alleged pizza party to agencies outside of the Michigan Department of Corrections, the next step for Plaintiff to prevail in his claim is to demonstrate retaliation. In order to prove a claim of retaliation, Plaintiff must establish that 1) Defendants knew of Plaintiff's exercise of protected activity; 2) that Defendants thereafter took an adverse employment action against Plaintiff; and 3) that there was an underlying causal connection between the protected activity and the adverse employment action.

There is a question of fact whether Defendants knew of Plaintiff's exercise of protected activity. Plaintiff states that another correction officer told Defendant Michalski about Plaintiff's reporting of the pizza party to outside agencies. In addition, viewing the evidence in a light most favorable to Plaintiff, there is evidence that Defendant Grzesiak was aware of Plaintiff's reports regarding a pizza party, and that Defendant Grzesiak questioned Plaintiff about such pizza party during his interview.

However, even with the presence of such a factual question, the Court does not believe that the decision not to award Plaintiff the position that he interviewed for constitutes an adverse employment action, in the context of a First Amendment retaliation claim. Defendants argue that the denial of a transfer or a transfer to another position does not constitute an adverse employment action absent a materially adverse change in terms and conditions of employment. The Sixth Circuit Court of Appeals recently came to the same conclusion, in ruling on a First Amendment retaliation case brought under Section 1983. Mills v. Williams, 276 Fed.Appx. 417, 2008 WL 1836730 (C.A.6 (Mich.)). In *Mills*, the Sixth Circuit held that a state employee's transfer to a position twenty miles from her previous position was not an adverse employment action that would support her First Amendment retaliation claim, where a reasonable person

would not find a transfer to a job with the same pay and benefits and an extra twenty miles away sufficient to deter the exercise of First Amendment rights. Id. Plaintiff's claim that the transfer was to a less convenient and a less prestigious position was not sufficient to persuade the court otherwise. Id. The Court's rationale applies equally to the reverse situation, such as that presented in the present case, in which Plaintiff was denied a lateral transfer. Plaintiff's claim is not sufficient to amount to a Section 1983 First Amendment violation.

V. Order

Accordingly,

IT IS ORDERED that Defendants' Motion for Summary Judgment is GRANTED.

                                             S/Bernard A. Friedman
                                             BERNARD A. FRIEDMAN
                                             CHIEF UNITED STATES DISTRICT JUDGE

Dated: November 24, 2008

I hereby certify that a copy of the foregoing document
was served upon counsel of record by electronic and/or first-class mail.

S/Carol Mullins
Case Manager to Chief Judge Friedman